UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO GENERAL INSURANCE
COMPANY, and GEICO CASUALTY COMPANY,

**MEMORANDUM & ORDER
23-CV-04388 (NGG) (TAM)**

Plaintiffs,

-against-

FAISAL MAHMOOD, M.D., ONE OAK MEDI-
CAL GROUP, LLC, ONE OAK ORTHOPAEDIC
& SPINE GROUP, LLC, JACK R. DUGO, JR.
D.C., and MIDDLETOWN SPINE AND JOINT
CARE, LLC.,

Defendants.

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Government Employees Insurance Company, GEICO
General Insurance Company, and GEICO Casualty Company
("GEICO" or "Plaintiffs") bring this action against Defendants
Faisal Mahmood, M.D., One Oak Orthopaedic & Spine Group,
LLC, Jack R. Dugo, Jr. D.C., and Middletown Spine and Joint
Care, LLC (collectively, "Defendants"), alleging that Defendants
defrauded GEICO in violation of the Racketeering Influenced and
Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c), (d)), by
submitting thousands of fraudulent bills for no-fault insurance
charges. (See Compl. (Dkt. 1) ¶¶ 1, 286-299, 325-338, 363-376.)
Plaintiffs also allege common law fraud, aiding and abetting
fraud, insurance fraud under New Jersey state law, and unjust
enrichment. (Id. ¶¶ 300-324, 339-362, 377-401). In addition to
damages, GEICO seeks a declaratory judgment that the Defend-
ants are not entitled to all outstanding billing submitted by
Defendants to GEICO. (Id. ¶¶ 279-285.)

GEICO now moves for a preliminary injunction to stay all 34
pending no-fault insurance collection arbitrations commenced

1

against GEICO by or on behalf of Defendants Faisal Mahmood, M.D. ("Mahmood") and One Oak Medical Group, LLC ("One Oak Medical") (collectively the "One Oak Defendants") and to enjoin the One Oak Defendants and Defendants Jack R. Dugo, JR., D.C. ("Dugo"), Middletown Spine and Joint Care, LLC ("Middletown Spine") (together with Dugo, the "Middletown Defendants") from commencing any further no-fault collections litigation against GEICO, pending disposition of GEICO's claims in this action. (*See* Mot. (Dkt. 30-1) at ECF 1-2, 8-9.) Additionally, Plaintiffs request that this court waive their obligation to post security for the injunction. (*See id.* at ECF 29-30.)

For the reasons set forth below, the court DENIES Plaintiffs' motions to stay the arbitration proceedings and enjoin new collection proceedings.

## I.  BACKGROUND[1]

### A.  New York and New Jersey's No-Fault Insurance Schemes

#### 1.  New York Law

In New York, an automobile insurer must provide certain no-fault insurance benefits ("Personal Injury Protection" or "No-Fault Benefits") to the individuals that they insure ("Insureds"). No-Fault Benefits cover up to $50,000 of necessary healthcare expenses that result from automobile accidents. *See* N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11 § 65-1.1. Often, Insureds assign their No-Fault Benefits to healthcare providers in exchange for services, and in turn, the provider, rather than the Insured, files no-fault claims with the insurance company directly. *See* NYCRR tit. 11 § 65-3.11(a) (providing that the benefits may be paid only "directly to

---

[1] The following background is taken from the allegations of the Complaint and declarations submitted by GEICO in connection with this motion.

the applicant" or "upon assignment by the applicant . . . directly to providers of healthcare services"). Providers are prohibited from receiving No-Fault Benefits, however, if they "fail[] to meet any applicable New York State or local licensing requirement necessary to perform such healthcare services." *Id.* § 65-3.16(a)(12); *see also State Farm Mut. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 321 (2005).

Under New York law, licensed healthcare services providers are prohibited from paying or accepting kickbacks in exchange for patient referrals and from sharing fees collected from professional services. *See* New York Education Law § 6512, § 6530(11), (18)-(19). Furthermore, when an ownership interest is shared or a compensation arrangement between healthcare providers exists, patients can be referred between the providers only if that financial relationship is disclosed. N.Y. Pub. Health § 238-d.

Insurers are only given 30 days to review and investigate claims before paying those claims to avoid risk of penalty for denying or delaying a claim. *See* NYCRR tit. 11 § 65-3.8(a); *see also Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 861 (2003).[2] After 30 days, interest begins to accrue at a rate of two percent per month. *See* N.Y. Ins. Law § 5106(a). Claimants may dispute unpaid no-fault claims either in a state civil action or, as at issue here, in an arbitration proceeding. *See* NYCRR tit. 11 § 65-4.1, *et seq.*; N.Y. Ins. Law § 5106(a). In arbitration proceedings to recover No-Fault Benefits, the process is "an expedited, simplified affair meant to work as quickly and efficiently as possible," and "[d]iscovery is limited or non-existent." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014). In arbitration proceedings for unpaid no-fault claims, the claimant pays a nominal filing fee, but all other costs are paid by the defendant insurance company,

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

including a mandatory non-refundable fee in each case in which it is named as a respondent by a healthcare provider seeking payment on a claim that the insurer has denied. (Kathleen Asmus Declaration ("Asmus Decl.") (Dkt. 30-1) at ECF 32-37 ¶ 12 (citing NYCRR tit. 11 § 65-4.2(c)(1)).)

### 2. New Jersey Law

New Jersey also has a comprehensive no-fault regime. *See Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-06118 (DG) (PK), 2021 WL 1146051, at *2 n.1 (E.D.N.Y. Mar. 25, 2021) (citing N.J. Stat. Ann. §§ 39:6A-1-35). As in New York, no-fault claims may be "assigned to healthcare service providers" and failure to comply with all "significant qualifying requirements of law that bear upon rendition of the service will render healthcare service providers ineligible for personal injury protection benefits." *Beynin*, 2021 WL 1146051, at *2 n.1.

New Jersey's regime, like New York's, also includes an arbitration statute where insurers may bring claims to recover "medical expense benefits or other benefits provided under personal injury protection coverage." *See* N.J. Stat. Ann. § 39:6A-5.1(a). Disputes concerning "medical expense benefits" include "whether the disputed medical treatment was actually performed," "the necessity or appropriateness of consultations by other health care providers," and "whether the treatment performed is reasonable, necessary, and compatible with the protocols provided." N.J. Stat. Ann. § 39:6A-5.1(c). "New Jersey courts have held that the statute mandating [Personal Injury Protection ("PIP")] arbitration must be read broadly" and that "arbitrators are authorized to determine both factual and legal issues, including whether a medical provider's claims should be disqualified for fraud." *Gov't Emps. Ins. Co v. Tri Cnty. Neurology & Rehab. LLC*, 721 F. App'x 118, 122 (3d Cir. 2018) (citing *State Farm Ins. Co. v. Sabato*, 337 N.J. Super. 393, 396 (2001)). Providers have a statutory right to

4

compel arbitration of disputes covered by the PIP arbitration statute. *Id.*

Despite this arbitration statute, plaintiffs may bring an action relating to fraudulent insurance claims in state or federal court under New Jersey's Insurance Fraud Prevention Act ("IFPA"). The IFPA seeks to prevent fraud by "facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims." N.J. Stat. Ann. § 17:33A-2. A person violates the IFPA if he or she "[p]resents or causes to be presented any written or oral statement as part of, or support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." N.J. Stat. Ann. § 17:33A-4(a). Insurance companies "damaged as the result of a violation of any provision of [the IFPA] may sue therefor in any court of competent jurisdiction." N.J. Stat. Ann. § 17:33A-7(a). New Jersey courts have repeatedly found that claims under the IFPA may be heard in state or federal courts, despite New Jersey's general arbitration requirement for no-fault claims. *See Gov't Emps. Ins. Co. v. Elkholy*, 2022 WL 2373917, at *9-10 (D.N.J. June 30, 2022) (citing *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1232 (N.J. 2015) ("[C]ourts routinely uphold the IFPA's absolute mandate for judicial resolution notwithstanding contractual clauses that would otherwise require arbitration of IFPA claims."); *see also Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018) ("The NJIFPA is not preempted by PIP arbitration rules.").

## B.  Factual Allegations

According to GEICO, beginning no later than 2017, Defendants "masterminded and implemented a complex fraudulent scheme"

in which they caused fraudulent and unlawful personal injury protection billing to be submitted to GEICO for "medically unnecessary, illusory, unlawful, and otherwise non-reimbursable services in New York and New Jersey." (Compl. ¶ 65.)

Plaintiffs' allegations can be classified into five different categories. First, Plaintiffs allege that Defendants violated New York licensing laws because Defendants did not have authority to operate as "professional healthcare practices in New York" and therefore "were not eligible for no-fault reimbursement in the first instance." (Compl. ¶¶ 4, 66-71, 74.)[3] Second, Plaintiffs allege that the Defendants "paid and received unlawful compensation in exchange for patient referrals." (*Id.* ¶¶ 4, 80-91.) Third, Plaintiffs allege that the One Oak Defendants made fraudulent misrepresentations concerning initial and follow-up examinations, including misrepresentations concerning eligibility to collect No-Fault Benefits. (*Id.* ¶¶ 4, 92-97, 159-63.) Fourth, Plaintiffs allege that the One Oak Defendants made fraudulent charges for a number of unnecessary surgeries or procedures, including those for: electrodiagnostic testing, (*id.* ¶¶ 187-191); pain management injections, (*id.* ¶¶ 228-233); and arthroscopic surgeries, (*id.* ¶¶ 244-252). And fifth, Plaintiffs allege that the Middletown Defendants made fraudulent charges for medically unnecessary chiropractic and physical therapy services. (*Id.* ¶¶ 253-55.)

Plaintiffs assert that through the Defendants' scheme, it has already incurred damages of more than $2,445,000 attributable to claims submitted by the One Oak Defendants and $810,000 attributable to claims submitted by the Middletown Defendants. (*Id.* ¶ 402; Mot. at ECF 13.)

---

[3] GEICO does not allege that Defendants were unauthorized to operate in New Jersey. (*See generally id.*)

In support of its fraud claims, GEICO has submitted three exhibits that list the claims that they allege were fraudulent or were in violation of New York licensing requirements. (*See e.g.*, Compl. ¶¶ 74, 91; *see also* Representative Sample of Fraudulent Claims Identified to Date for One Oak Medical (Dkt. 1-3) ("Sample of One Oak Medical Claims"); Representative Sample of Fraudulent Claims Identified to Date for Middletown Spine & Joint (Dkt. 1-5) ("Sample of Middletown Claims").)

In response to GEICO's motion, the One Oak Defendants challenge the factual allegations made by Plaintiffs. Christopher Bladel, counsel for the One Oak Defendants, states that GEICO has not provided the Defendants with any documents that GEICO cites in its Complaint as supporting its allegations. (One Oak Opp. (Dkt. 30-2) at ECF 33-37 ("Bladel Decl.") ¶¶ 3-5.) Bladel also states that many of the claims listed in the exhibit to GEICO's Complaint are duplicates relating to the same underlying automobile accident. (*Id.* ¶¶ 9, 11.) Thus, Bladel asserts that the total of unique claim numbers attributable to the One Oak Defendants is 661, not 6,114 as GEICO has alleged. (*Id.* ¶¶ 8-9.) Similarly, Bladel states that the total of unique claim numbers attributable to the Middletown Defendants is 295 rather than 46,454 as GEICO has alleged. (*Id.* ¶¶ 10-11.) Bladel also states that there are only 66 "overlapping" claims for Insureds that were treated by both the Middletown Defendants and the One Oak Defendants. (*Id.* ¶¶ 12-14.) GEICO, in its Reply, does not respond to this declaration. (*See generally* Reply to One Oak Opp. (Dkt. 30-4) at 8-9; Reply to Middletown Opp. (Dkt. 30-5).)

## C. Procedural History

On June 14, 2023, Plaintiffs filed the instant Complaint alleging that Defendants defrauded GEICO in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c), (d)), (*see* Compl. ¶¶ 1, 286-99, 325-38, 363-76), common law fraud, aiding and abetting fraud, violation of New

Jersey's fraud prevention act, and unjust enrichment. (*Id.* ¶¶ 300-24, 339-62, 377-401). GEICO seeks a declaration that Defendants are "not in compliance with all significant laws and regulations and/or licensing laws governing healthcare practice during the time period when billing for the Fraudulent Services were submitted to GEICO" and that Defendants "are not entitled to receive payment on the outstanding billing they have submitted to GEICO under New York no-fault insurance policies[.]" (Compl. ¶¶ 279-85.) On November 17, 2023, GEICO filed the fully briefed instant motion to stay all pending arbitrations and to enjoin the Defendants from commencing further no-fault collection arbitrations or litigation. (*See* Mot. at ECF 1; One Oak Opp.; Middletown Opp. (Dkt. 30-3); Reply to One Oak Opp.; Reply to Middletown Opp.)

## II. LEGAL STANDARD

In determining whether to enjoin a proceeding or issue a stay, courts in this Circuit have employed the preliminary injunction standard. *See Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013); *see also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). Under this standard, "a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Elzanaty*, 929 F. Supp. 2d at 217.[4] The burden is on the Plaintiffs to establish these elements by a preponderance of the evidence. *See AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010). A "complaint

---

[4] "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.*

alone can be sufficient to grant an injunction" where "the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals." *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 499 (E.D.N.Y. 2021).

Courts in this Circuit—including this court—have often stayed proceedings where the complaint alleges no-fault insurance fraud schemes. *See, e.g., Gov't Emps. Ins. Co., et al. v. Barakat et al.*, No. 22-CV-7532 (NGG) (RLM) (Dkt. 26), at 17 (E.D.N.Y. Jan. 2, 2024); *Gov't Emps. Ins. Co. v. Binns*, No. 22-CV-1553 (NGG) (PK), 2022 WL 4539361, at *10 (E.D.N.Y. Sept. 28, 2022); *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *14 (E.D.N.Y. Mar. 29, 2022); *Relief Med.*, 554 F. Supp. 3d at 506; *Gov't Emps. Ins. Co. v. Wallegood, Inc.*, No. 21-CV-1986 (PKC) (RLM) (Dkt. 36), at 21 (E.D.N.Y. July 16, 2021); *Beynin*, 2021 WL 1146051, at *10; *Gov't Emps. Ins. Co. v. Big Apple Med. Equip., Inc.*, No. 20-CV-5786 (PKC) (JRC) (Dkt. 52), at 22 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Wellmart RX*, 435 F. Supp. 3d 443, 456; *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 235 (E.D.N.Y. 2018). However, stays are not automatically granted and will be denied if the movant fails to establish the elements of a preliminary injunction by a preponderance of the evidence. *See Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. Appx. 716, 718 (2d. Cir. 2017) (summary order) (affirming lower court's denial of preliminary injunction where plaintiffs failed to establish irreparable harm); *see also Barakat*, No. 22-CV-7532, at 11-12 (collecting cases where courts in this Circuit have denied motions for injunctive relief in cases considering similar claims).[5]

---

[5] The court notes that the cases this court discussed in *Barakat* are often not relied on by courts considering similar claims because these cases do not discuss the specifics of the claims at issue or do not consider the risk of

## III. DISCUSSION

### A. Anti-Injunction Act

The court first addresses Defendant's argument that the Anti-Injunction Act ("AIA") limits the court's ability to stay the pending arbitration proceedings. (*See* One Oak Opp. at 20-22.)

Under the AIA: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The AIA does not limit the court's authority to enjoin ongoing private arbitration proceedings or the court's authority to enjoin defendants from initiating future proceedings. *See State Farm Mut. Auto. Ins. Co. v. Eclipse Med. Imaging, P.C.*, No. 23-CV-3124 (EM) (RML), 2023 WL 7222827, at *11 n.24 (E.D.N.Y. Nov. 2, 2023) ("State Farm explicitly concedes that they do not seek to stay the one ongoing state court action, therefore the Anti Injunction act is not implicated."); *Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *8-9 (E.D.N.Y. Nov. 16, 2018) ("[T]he Anti-Injunction Act does not prevent federal courts from enjoining proceedings in state courts that have not yet been filed[.]").

Plaintiffs seek only to stay "all pending no-fault insurance *arbitrations*" and enjoin Plaintiffs from filing future arbitrations or new collection litigation. (*See* Mot. at ECF 1 (emphasis added).) Therefore, the AIA does not apply.

---

inconsistent claims in arbitration proceedings. *See Barakat*, No. 22-CV-7532, at 11-12. The court does not rely on these cases in denying Plaintiffs' request, but cites them to illustrate that while courts often grants these requests, injunctions are not granted as a matter of course in cases alleging a no-fault insurance fraud scheme.

### B. Preliminary Injunction Factors

#### 1. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221. A party establishes irreparable harm when "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). The harm "must be shown to be actual and imminent, not remote or speculative." *Id.*

Courts in this district considering insurance fraud relating to no-fault insurance claims have found that "[i]rreparable harm occurred where an insurer is required to waste time and resources defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action." *See Barakat*, No. 22-CV-7532, at 10 (collecting cases). These cases generally dealt with New York law, but New Jersey courts have found that irreparable harm is also found when plaintiff insurers are forced to defend against individual claims in "piecemeal fashion" when doing so masks the true "nature and extent of the fraudulent activity." *Allstate Ins. Co. v. Lopez*, 311 N.J. Super. 660, 670, 710 A.2d 1072, 1077 (Law. Div. 1998).

Here, there is a similar risk of inconsistent judgments and a waste of resources in resolving individual arbitrations when they could be settled in a single action. But such a risk exists for any action alleging fraud in no-fault collections when there are related ongoing arbitration proceedings considering such claims, as required by New York and New Jersey's no-fraud insurance schemes. And this case differs in meaningful respects from cases

such that Plaintiffs here have not demonstrated irreparable harm absent injunctive relief.

First, this case does not involve insolvent defendants. In many analogous cases, including those considered by this court, plaintiffs alleged that defendants were insolvent, ceased operations, and/or were facing related criminal charges, which factored into the court's consideration of whether damages would be available to recover arbitration payments should the plaintiffs ultimately prevail. *See, e.g., Barakat,* No. 22-CV-7532 at 12 ("GEICO has shown that money damages may not be available if the Defendants are to prevail."); *See Allstate Ins. Co., et al. v. Pierre et al.,* No. 22-CV-6572 (NGG) (LB) (Dkt. 45), at 12 (E.D.N.Y. Jan. 8, 2024) ("Defendants are currently under indictment for their role in the fraudulent scheme and if convicted, they will likely be unable to satisfy an award of compensatory damages in the excess of $2,749,000.00 sought by Allstate in the present case."); *Binns,* 2022 WL 4539361, at *6-7 ("GEICO also faces irreparable harm stemming from the risk that it may be unable to collect monetary damages."); *Landow,* 2022 WL 939717, at *11-12 (noting that many of the defendants were no longer in business and that a remedy at law would therefore be inadequate to compensate the plaintiffs); *Wellmart RX,* 435 F. Supp. 3d at 452. Here, there are not allegations that Defendants are on the verge of insolvency or would otherwise be unable to compensate Defendants for damages absent a stay. This weighs against finding irreparable harm given that a preliminary injunction is generally unavailable when damages provide an adequate remedy. *Moore,* 409 F.3d at 510.

Second, many of these cases involved significantly more active arbitrations than the present case, indicating that more time and resources would be wasted resolving separate individual disputes while the federal court action was pending. Here, there are only thirty-four active arbitrations, significantly fewer than the number in similar cases. *See, e.g., Beynin,* 2021 WL 1146051, at *4

(involving "at least" 591 active arbitrations); *Landow*, 2022 WL 939717, at \*11 (noting that 3,200 arbitration proceedings and 1,160 civil suits had been filed by defendants). In addition, while GEICO submitted a listing of 6,114 claims for the One Oak Defendants and 46,454 claims for the Middletown Defendants, many of these were duplicates involving the same accident and only sixty-six claims correspond to patients treated by both the One Oak Defendants and Middletown Spine. (*See* Bladel Decl. ¶¶ 8-14.) Plaintiffs do not provide evidence that litigating the relatively small number of disputed arbitrations would irreparably harm them absent a stay, even in light of the risk of inconsistent judgments and a waste of resources. *Cf. Barakat*, No. 22-CV-7532 at 12 (finding irreparable harm where GEICO alleged risk of inconsistent judgments among 43 pending arbitrations *in addition to* money damages likely not being available because the Barakat practices were likely insolvent).

Third, unlike here, many of the cases in which courts granted a stay and preliminary injunction involved claims where there was more evidence of fraud because: plaintiffs practiced without a license; unlicensed laypersons illegally controlled their practices; or there were related criminal proceedings indicating that defendants operated a fraudulent enterprise.[6] In *Barakat*, for instance, this court found that a stay was warranted where GEICO alleged that an unlicensed layperson illegally owned and controlled the defendants' practices and where there was evidence that the defendants were funneling money to an individual

---

[6] This consideration necessarily overlaps with the next factor considering the merits because the irreparable harm here is based on the risk of inconsistent judgments in arbitration proceedings and the risk that Plaintiffs will not be able to recover the time or resources expended disputing these claims in arbitration. To evaluate this risk, the court must consider the claims and the disputed evidence that Plaintiffs allege supports these claims.

recently indicted for fraud. *Barakat,* No. 22-CV-7532, at 6-8 (noting that the individual was alleged to have paid "tens of thousands of dollars—and used the funds to pay for his condominium in Florida"). In *Pierre,* this court considered a request to stay arbitration where defendants were also indicted and where the defendant did not respond to the request for a stay because he disappeared and may have died following a boating accident. *See Allstate Ins. Co., et al. v. Pierre et al.,* No. 22-CV-6572 (NGG) (LB) (Dkt. 45), at 10 (E.D.N.Y. Jan. 8, 2024); *see also United States v. Pierre,* No. 22-CR-19 (PGG) (Dkt. 262-1) (letter noting presumed death as to Defendant Marvin Moy filed in the related criminal case). And in *Landow,* also considered by this court, Plaintiffs alleged that the defendant violated licensing requirements by using independent contractors to offer services while the defendant physician resided out of the state and was unable to supervise the practice submitting no-fault insurance claims. *Landow,* 2022 WL 939717, at *2-3. Here, the claims involve much more ordinary allegations of fraud. They involve alleged violations of referral rules and billing for unnecessary procedures by individuals licensed to practice in New York and New Jersey, (*see* Compl. ¶¶ 10, 12), who appear to continue to operate in these states.

Plaintiffs do not even argue Defendants were unauthorized to submit no-fault claims in New Jersey. (*See* Compl. ¶ 74 (noting that services provided in New York were in violation of licensing laws but not those in New Jersey).) This is notable because the One Oak Defendants submit that approximately 75% of them "were administered by GEICO in accordance with New Jersey law" and Plaintiffs do not review how many no-fault insurance claims were submitted under each state's insurance regime (One Oak Opp. at 6 n.8.) And although GEICO alleges that the Defendants violated New York licensing laws, GEICO do not point to statutes or regulations requiring that the entity itself, rather than the physicians, be separately incorporated or licensed in

New York when, as here, the professionals are themselves licensed and the entity is registered and incorporated in New Jersey. (*See generally* Compl. ¶¶ 66-73.)[7] Thus, this case is unlike other cases where inability to comply with licensing requirements or operation by laypersons gave a stronger inference that the enterprise was fraudulent and indicated a greater likelihood that the arbitrations will be a waste of resources. While the allegations are serious and detailed, demonstrating the requirements for a preliminary injunction requires more. *See Moore*, 409 F.3d at 510 (preliminary injunctive relief "is an extraordinary and drastic remedy.")

In sum, GEICO does not sufficiently demonstrate that they would face irreparable harm that could not be compensated with money damages if they ultimately prevail. Unlike other cases where courts in this district have ordered a stay and enjoined further litigation relating to No-Fault Benefits, the claims here: (1) involve a relatively small number of active arbitrations; (2) do not involve allegations against insolvent defendants that would be unable to satisfy a damages judgment; (3) do not involve defendants that have been implicated in other cases showing past examples of criminal wrongdoing; and (4) do not involve claims by unlicensed defendants. Plaintiffs bear the burden to demonstrate irreparable harm. These same plaintiffs have met this

---

[7] GEICO cites a number of regulations or statutes in its Complaint when alleging that Defendants were unlawfully operating in New York. (*See* Compl. ¶¶ 67-68 (citing 11 N.Y.C.R.R. § 65-3.16(a)(12); N.Y. Educ. Law §§ 6509, 6530; N.Y. Bus. Corp. Law §§ 1503, 1514).) However, while 11 N.Y.C.R.R. § 65-3.16(a)(12) requires providers to meet New York licensing requirements to be eligible to receive No-Fault Benefits, GEICO does not cite any statutes, regulations or case law to support the proposition that a provider violates New York licensing laws when incorporated under New Jersey law, as opposed to New York law, when the individual practitioners were licensed to practice in New York, as Defendants Mahmood and Dugo are here. (*See generally* Compl. 66-72; *see also* Compl. ¶¶ 10, 12.)

burden in other cases, including cases before this court, but they have not done so here.

### 2. Serious Question Going to the Merits

Because the court found that Plaintiffs did not meet the irreparable harm requirement, it does not need to consider the remaining factors of the preliminary injunction analysis. *Allied Bldg. Prod. Corp. v. George Parsons Roofing & Siding, Inc.*, No. 16-CV-4161 (JMA) (SIL), 2017 WL 2964018, at *1 (E.D.N.Y. Mar. 31, 2017) ("Because [plaintiff] has failed to demonstrate a likelihood of irreparable harm, the Court need not discuss the remaining factors."). The court briefly considers the remaining factors for completeness, however.

"District courts in the Second Circuit have generally found that likelihood of success is not the focus at the early stages of a case involving an alleged scheme to defraud an insurer of assigned no-fault benefits because any likelihood of success inquiry would be premature." *Relief Med.*, 554 F. Supp. 3d at 498 (collecting cases). Instead, "the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F. Supp. 2d at 217; *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-03611 (NRM) (RER), 2023 WL 4532460, at *10 (E.D.N.Y. July 13, 2023); *see also Parisien*, 352 F. Supp. 3d at 234; *Landow*, 2022 WL 939717, at *12; *Wellmart RX*, 435 F. Supp. 3d at 453. "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

In considering the showing by GEICO, this case is not materially different as it relates to the claims brought under New York's no-

fault insurance regime. As in prior cases in this district seeking a stay, GEICO has submitted a lengthy Complaint (here, 120 pages) supplemented by a listing of purportedly fraudulent claims submitted by Defendants. (*See generally* Compl.; Sample of One Oak Medical Claims; Sample of Middletown Claims.) GEICO also pleads, with particularity, an extensive fraudulent scheme aimed at exploiting state no-fault insurance laws by misrepresenting billing codes, submitting claims for services that were medically unnecessary and illusory, billing according to a pre-determined protocol without regard for the Insureds specific circumstance, performing services pursuant to improper kickback and referral schemes, and violating New York state licensing laws. (*See generally* Compl.) Courts in this district, including this court, have found similar pleadings and evidence sufficient to meet this factor in cases considering nearly identical claims. *See Relief Med.*, P.C., 554 F. Supp. at 499-500 (collecting cases).

The court notes, however, that there are significant differences between New York's and New Jersey's no-fault insurance claims that Plaintiffs do not sufficiently address in their Complaint or in their memoranda filed to support the present motion. As noted, a significant portion of the insurance claims at issue were administered in accordance with New Jersey law, but Plaintiffs' memorandum of law in support of their motion to stay and enjoin the collections proceedings focuses almost entirely on New York law. (*See generally* Mot. at ECF 6-8; Asmus Decl.). In response to the One Oak Defendants' noting the absence of a discussion of New Jersey law, GEICO's Reply reviews certain aspects of the New Jersey regime and includes arguments that any differences between New York and New Jersey's regimes are not substantial. (*See generally* Reply to One Oak Opp. at 2-5; *see also* One Oak Opp. at 6-7.) The key issues, according to Plaintiff, are the same under both New Jersey and New York law—that there are limitations in the arbitration process limiting access to discovery which make addressing complex fraud issues difficult. (Reply

to One Oak Opp. at 2-5.) These issues are of course inherent to arbitration proceedings more generally.

Plaintiffs do not address, however, that New Jersey courts have noted a strong preference in New Jersey for arbitration of no-fault insurance claims and that GEICO agreed to resolve no-fault claims through arbitration in New Jersey. *See Tri Cnty. Neurology & Rehab. LLC*, 721 F. App'x at 122 (rejecting a declaratory judgment action alleging fraud in no-fault proceedings because the dispute fell under New Jersey's PIP arbitration statute, and GEICO and the defendants each have the statutory right to compel arbitration to resolve this dispute.) GEICO's submission in New Jersey of a decision point review plan ("DPRP"), which includes an express arbitration provision, indicates an agreement to arbitrate no-fault claims. (*See* One Oak Opp. at 10-11 (citing N.J.A.C. § 11:3-4.7).) Courts have considered such a provision in finding that no-fault claims in the state belong in arbitration rather than federal court, even when plaintiffs bring RICO actions based on fraud. *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, No. 22-CV-737, 2023 WL 2063115, at *5 (D.N.J. Feb. 17, 2023).

On the other hand, Plaintiffs also allege claims under New Jersey's Insurance Fraud Prevention Act ("IFPA"). (Compl. ¶¶ 321-24.) This statute authorizes Plaintiffs to bring damages claims in any court of competent jurisdiction, *see also* N.J. Stat. Ann. § 17:33A-7(a)-(b), and may provide an alternative to allow GEICO to seek a stay and injunction of the arbitration proceedings. But GEICO does not discuss its IFPA claims as separate from its general fraud claims and why these separately support the requested equitable relief. (*See generally* Mot.; Reply to One Oak Opp.) The interplay of New Jersey's preference for resolving these claims in arbitration and the State's IFPA make the analysis of this prong distinct from cases in this district that generally considered only New York's no-fault insurance regime. *See State Farm Guar. Ins.*

18

*Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*, No. 22-CV-4852 (ES) (CLW), 2023 WL 4362748, at *4-8 (D.N.J. July 6, 2023) (collecting cases considering NJIFPA, RICO and common law fraud claims).

Ultimately, because the court finds that Defendants do not demonstrate irreparable harm, it does not need to consider whether these differences are significant enough to independently deny Plaintiffs' motion under this factor.[8]

### 3. Balance of Hardships

In cases where plaintiffs bring similar claims, this factor generally supports a stay. As this court noted in *Barakat*, absent a stay, Plaintiffs must litigate potentially wasteful arbitrations while Defendants' recovery of the benefits to which they were entitled would simply be delayed. *Barakat*, No. 22-CV-7532, at 14-15; *see also Parisien*, 352 F. Supp. 3d at 234; *Wellmart RX*, 435 F. Supp. 3d at 455; *Kotkes*, 2023 WL 4532460, at *11. And should the Defendants prevail, they will be entitled to the collection of high rates of statutory interest on their outstanding no-fault claims. *Barakat*, No. 22-CV-7532, at 15; *see also Elzanaty*, 929 F. Supp. 2d at 222 (Defendant "will benefit from a stay if it ultimately prevails in this matter, because it will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue.").

This may be different, however, in this case. The Middletown Defendants raise a concern that an inability to collect no-fault claims for its services would jeopardize their practice because the "defendants are doctors with wholly owned small businesses that rely on ongoing cash flow to support their practices' overhead and

---

[8] The court also need not discuss Defendants' alternative argument that a preliminary injunction is not warranted because, as Defendants argue, the relief sought by Plaintiffs goes beyond the final relief demanded in the Complaint. (*See* One Oak Opp. at 8, 16-18.)

allow them to practice their profession." (Middletown Opp. at 4-5.) GEICO does not assert a countervailing concern that without this cashflow its business would be in jeopardy. This concern makes this case different from cases like *Barakat* where the defendants in that case were no longer operating their business and cashflow would therefore not jeopardize its operations. *See Barakat,* No. 22-CV-7532, at 10-11 (noting that the practices at issue were likely insolvent and closed down their operations). However, the court notes that Defendants do not provide evidence, even in the form of a sworn declaration, to support their contention that the absence of cash flow from these claims would threaten the operation of their business.

Because the court found that Defendants do not demonstrate irreparable harm, it does not need to determine whether Plaintiffs meet this factor.

### 4. Public Interest

When analyzing the public interest prong, a court considers "the public consequences in employing the extraordinary remedy of injunction" and ensures that the "proposed injunction will not harm the public interest." *Relief Med.,* 554 F. Supp. 3d at 504.[9]

Here, New York and New Jersey have established a no-fault insurance system designed to protect accident victims in a manner that is in the public's interest. *Mayzenberg,* 2018 WL 6031156, at *10. On the other hand, "allegations of fraud on our health care system" are all "too common" and preventing fraud is also in the public's interest. *Id.* In considering these dueling interests, "this factor is neutral in the court's analysis." *Barakat,* No. 22-CV-7532, at 16; *see also Gov't Emps. Ins. Co. v. Strut,* No. 19-CV-728 (JLS), 2020 WL 1820500, at *3 n.8 (W.D.N.Y. Apr. 10, 2020)

---

[9] The court takes notice that in this private dispute it need not determine whether the requested injunction will not harm the public interest. *See Kelly v. Honeywell Int'l, Inc.,* 933 F.3d 173, 183-84 (2d Cir. 2019).

(finding it was not required to consider the public interest but that in any event, the factor is neutral where there is a public interest in both enforcing New York's no-fault scheme and preventing fraud on the healthcare system).

In sum, Plaintiffs have not demonstrated by a preponderance of the evidence that they would suffer irreparable harm absent their requested stay and injunction. The court therefore DENIES Plaintiffs' motion. In reviewing the other factors, Plaintiffs do not adequately address differences in this case and others alleging similar no-fault insurance fraud schemes, but for the reasons discussed *supra*, the court need not determine whether ruling on these factors would independently lead the court to deny Plaintiffs' requested injunctive relief.[10]

## IV.  CONCLUSION

For the foregoing reasons, GEICO's motion to stay all pending no-fault insurance collection arbitrations brought by or on behalf of Defendants is DENIED.

SO ORDERED.

Dated:      Brooklyn, New York
               January 10, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[10] Because the court denies GEICO's motion, GEICO's request to waive Rule 65(c)'s security requirement is denied as moot.